# 99 DTA 190

### TRIBUNAL DE CIRCUITO DE APELACIONES
### CIRCUITO REGIONAL DE CAROLINA-FAJARDO

MANUEL E. LAUREANO IRIZARRY H/N/C MASTER TRANSPORT
Apelante

v.

EMERY AIR FREIGHT CORP. SUCESORA DE DERECHO DE C.F. Y OTROS
Apelado

MANUEL E. LAUREANO IRIZARRY H/N/C MASTER TRANSPORT
Apelado

v.

EMERY AIR FREIGHT CORP. SUCESORA DE DERECHO DE C.F. Y OTROS
Apelantes

Núm. KLAN-99-00087

Núm. KLAN-99-00089

San Juan, Puerto Rico, a 4 de junio de 1999

Panel integrado por su Presidente, Juez Miranda De Hostos
y los Jueces Rivera Pérez y Rodríguez García

Miranda De Hostos, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Se apela una sentencia del Tribunal de Primera Instancia, Sala Superior de Carolina, que desestimó la demanda que presentó Manuel E. Laureano h/n/c Master Transport (Master Transport), contra Emery Air Freight Corp. (Emery), así como la reconvención.

Inconforme con la determinación, acudieron ambas partes en apelación, Master Transport, como parte apelante en el recurso Núm. KLAN-99-00087 y alega que incidió el tribunal en la apreciación de la prueba, al descartar cierto testimonio y porque las determinaciones de hecho alegadamente no estaban sustentadas por la evidencia desfilada. De otra parte, Emery alega en el recurso Núm. KLAN-99-00089 que incidió el tribunal al desestimar su reconvención.

Confirmamos la sentencia apelada en cuanto a la desestimación de la demanda y se revoca en cuanto a la desestimación de la reconvención, por los siguientes fundamentos.

I

Master Transport era una compañía que se dedicaba al servicio de transportación de carga terrestre por contrato y era acarreador exclusivo de CF Air Freight (CF), la cual se dedicaba al transporte aéreo de carga dentro y fuera de la isla.

En octubre de 1988, CF y Master Transport comenzaron negociaciones para suscribir un contrato de recibo, distribución, transportación terrestre y entrega de los artículos introducidos por CF a Puerto Rico en sus instalaciones en el Aeropuerto Internacional Luis Muñoz Marín. Dicho contrato se firmó el 7 de diciembre de

1988 y para esa fecha, Master Transport tenía permiso para operar 8 camiones. (T.E., vista del 14 de octubre de 1997, págs. 77-78; T.E., vista del 15 de diciembre de 1997, pág. 122).

El contrato suscrito contenía una cláusula en la que Master Transport garantizaba estar autorizado para transportar carga en las áreas designadas y disponía que, si CP se lo requería, tenía que proveerle copia de los permisos de operación. (Apéndice del apelante en el Núm. KLAN-99-00087, pág. 101). A los fines de cumplir con la obligación contraída mediante el contrato firmado, Master Transport arrendó 25 camiones comerciales.

El 17 de abril de 1989, CF adquirió y se consolidó con Emery, que es una compañía que ofrece servicios de carga aérea las 24 horas alrededor del mundo, transportando de cinco libras a cinco toneladas de carga diariamente. No obstante, Emery decidió retener a Master Transport como su compañía de acarreo bajo las mismas condiciones estipuladas en el contrato firmado con CF el 7 de diciembre de 1988. (T.E., vista del 15 de octubre de 1997, pág. 60).

Los permisos que Master Transport tenía para operar 8 camiones expiraron el 23 de junio de 1989; además, en octubre de 1989 Master Transport comenzó a enfrentar problemas laborales. (T.E., vista del 15 de octubre de 1997, págs. 65-68). Como consecuencia de ello, los empleados de Master Transport realizaron una huelga en los predios de Emery. (T.E., vista del 15 de diciembre de 1997, pág. 8).

El 14 de noviembre de 1989, varios funcionarios de la Comisión de Servicio Público y de la Policía de Puerto Rico, paralizaron la operación de los camiones de acarreo de Master Transport porque éstos no contaban con los permisos requeridos por ley. (T.E., vista del 14 de octubre de 1997, págs. 58-59). Ese mismo día, Master Transport cesó operaciones y cesó todos sus empleados y los que tenía con Emery. (T.E., vista del 15 de octubre del 1997, pág. 68). El 15 de noviembre de 1989, Master Transport solicitó un permiso provisional mientras se tramitaba su petición de autorización nueva para realizar sus operaciones de carga por contrato en la Base Muñiz y en el aeropuerto.

Luego de la paralización de los camiones de Master Transport, Manuel Laureano sostuvo una reunión con Miguel Reyes, Gerente de Terminal de Emery, en la que se le indicó que si conseguía los permisos de la Comisión podía someter una propuesta a Emery para ser considerado nuevamente como acarreador en el proceso de subasta. (T.E, vista del 14 de octubre de 1997, págs. 154, 209). Además, Reyes le escribió una carta al Presidente de la Comisión indicándole que Master Transport había mantenido una situación positiva hasta el mes de octubre de 1989.

Según la prueba desfilada, las únicas personas con facultad para autorizar un contrato de acarreo a noviembre de 1989 y sujeto a la aprobación final de la división legal de Emery, eran Louis Bowers y Eric Kirshner, Vicepresidente de Emery y Gerente de División, respectivamente. Por lo cual, Miguel Reyes no tenía autoridad ni facultad alguna para contratar servicios de acarreo terrestre en representación de Emery. (T.E., vista del 14 de octubre de 1997, págs.101-102, 108. Valga señalar que a Miguel Reyes se le radicaron cargos criminales por apropiación ilegal, alterar facturas de la compañía, por lo que fue despedido el 4 de enero de 1990 de Emery. (T.E., vista del 15 de diciembre de 1997, págs. 42, 51).

El 23 de abril de 1990, Manuel Laureano le ofreció a Eric Kirshner, reducirle las tarifas con el fin de que Emery contratara sus servicios de acarreo nuevamente. En junio de 1990, Emery le notificó a Master Transport que no renovaría el contrato. En diciembre, Master Transport radicó una demanda contra Emery por incumplimiento de contrato y daños y perjuicios y Emery la contestó y presentó una reconvención alegando que se le causaron daños al no proveerle el servicio de transportación según lo pactado.

Luego de los trámites correspondientes y la celebración de una vista, el tribunal apelado emitió sentencia desestimando la demanda presentada por Master Transport y la reconvención instada por Emery.

Inconforme, ambas partes acudieron ante nos, mediante recursos separados, los cuales fueron consolidados.

## II

Analicemos el derecho aplicable a la luz de los hechos antes descritos.

### RECURSO APELATIVO DE MASTER TRANSPORT, Núm. KLAN-99-00087

Se plantea como error que incidió el tribunal al descartar cierto testimonio y al realizar determinaciones de hecho que alegadamente no estaban sustentadas por la evidencia desfilada.

El error no fue cometido. Veamos porqué.

En primer lugar, es principio firmemente establecido que un tribunal apelativo le debe deferencia a las determinaciones de hecho que realice un tribunal de instancia y que éstas no deben variarse, a menos que medie pasión, prejuicio, parcialidad o error manifiesto. *Blás Toledo v. Hosp. Ntra. Sra. de la Guadalupe,* opinión del 30 de junio de 1998, **98 J.T.S. 101,** pág. 1427.

Por otro lado, hay que mencionar, en cuanto al aspecto sustantivo que nuestro Código Civil establece, que las obligaciones que nacen de los acuerdos contractuales tienen fuerza de ley entre los contratantes y deben cumplirse a tenor con los mismos. Art. 1044, Código Civil, 31 L.P.R.A. 2994. Nuestro ordenamiento dispone también que el cumplimiento de los contratos no puede dejarse al arbitrio de uno de los contratantes. Art. 1208, *supra,* 31 L.P.R.A. 3373.

De otra parte, el Código Civil establece que si uno de los contratantes incumple con sus prestaciones, el otro puede dar por resuelto el contrato sin que el tribunal declare la resolución del mismo. Art. 1077, *supra*; 31 L.P.R. A. 3052; *Flores v. Municipio de Caguas,* 114 D.P.R. 521, 528-529 (1985); *Constructora Bauzá Inc. v. García López,* 129 D.P.R. 579, 593 (1991).

Conforme a las normas de derecho presentadas, analicemos las circunstancias del presente caso.

La controversia ante nos, según fue delimitada en el Tribunal de Primera Instancia, se circunscribe a demostrar si hubo o no contrato entre las partes, si éste fue incumplido, y en qué forma.

Es claro que existía un contrato y que el mismo fue suscrito por Master Transport y CF el 7 de diciembre de 1988. Emery optó por continuar utilizando los servicios de acarreo de Master Transport, una vez se consolidó con CF, bajo las mismas condiciones acordadas en el contrato del 7 de diciembre de 1988.

La evidencia demostró que el 23 de junio de 1989 se habían vencido los permisos requeridos por la Comisión para que Master Transport operara los 8 camiones para los que estaba autorizado. De la prueba surge que Manuel E. Laureano no renovó los mismos, por lo que funcionarios del orden público se vieron precisados a detener sus operaciones. La paralización de su actividad de transporte condujo a Master Transport a incumplir su prestación con Emery.

Ante tales circunstancias, Emery se vio obligada a contratar otra compañía de servicio de acarreo porque no podía dejar su carga sin transportar. El curso de sus negocios no podía detenerse, por lo que Emery tenía el

derecho a resolver el contrato con Master Transport y contratar a otra compañía de acarreo.

El señalamiento de que erró el tribunal al descartar el testimonio de Miguel Reyes es inmeritorio, pues no se trata de un error en la apreciación de la prueba sino de credibilidad. El tribunal apelado no le dio credibilidad a dicho testigo, porque de la prueba surge que actuó representando a Emery, cuando carecía de tal autoridad; y su testimonio quedó en entredicho cuando se probó que por alterar facturas de la compañía fue despedido.

Por último, en cuanto al planteamiento de que erró el tribunal apelado al hacer determinaciones de hecho sin estar sustentadas por la evidencia, sólo basta con señalar que la apreciación del apelante es incorrecta. Todas las determinaciones de hecho en cuanto a la demanda original están avaladas por la prueba documental y por la evidencia testifical creída por el foro apelado, y en ausencia de pasión, prejuicio o parcialidad, no variaremos su dictamen.

## III
## RECURSO APELATIVO DE EMERY, Núm. KLAN-99-00089

En este recurso se plantea que incidió el tribunal apelado al desestimar su reconvención sin permitirle presentar prueba a Emery para sustentar sus alegaciones.

El apelante Emery en este recurso tiene razón.

Nuestro esquema constitucional dispone que ninguna persona será privada de su libertad o propiedad sin el debido proceso de ley. Art. II, Sección 7 de la Constitución del ELA.

Para que se active la protección del debido proceso de ley tiene que existir un interés propietario o de libertad que esté afectado. La principal característica del debido proceso de ley es que sea un procedimiento justo y que se le brinde a las partes la oportunidad de ser escuchados y defenderse. *Unión Independiente de Empleados de la Autoridad de Edificios Públicos v. Autoridad de Edificios Públicos,* opinión del 13 de agosto de 1998, **98 J.T.S. 111,** pág. 51.

Cuando existe una controversia en cuanto a hechos importantes y derechos reclamados, antes de adjudicarse en los méritos, debe celebrarse una vista donde participen las partes y se le de oportunidad para sustentar sus alegaciones, ya sea mediante prueba testifical o documental. *Rivera Rodríguez v. Stowell Taylor,* opinión de 30 de junio de 1993, **93 J.T.S. 111**, pág. 10931. (Casos citados.)

En el aspecto procesal civil, se consideran reconvenciones compulsorias, aquellas reclamaciones que se presentan contra la parte adversa, siempre que surja del acto, omisión o evento que motivó la reclamación original de dicha parte adversa. Regla 11.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III.

Con relación a este error, de los documentos en autos y de la transcripción de la vista, surge que Emery alegó que sufrió daños al tener que contratar a otras compañías para que les dieran el servicio que Master Transport debió proveerle según lo pactado. Se trata de una reconvención compulsoria que está estrechamente relacionada con la controversia alegada en la reclamación original. Por lo que resolvemos que el tribunal apelado incidió al no permitirle a Emery presentar la prueba sobre las alegaciones de su reconvención.

Concluimos que el error señalado fue cometido, por lo que procede que se devuelva el caso al Tribunal de Primera Instancia para que celebre una vista en donde se diluciden las alegaciones de la reconvención y se adjudiquen en sus méritos.

## IV

Por los anteriores fundamentos, se confirma la sentencia apelada en cuanto a la desestimación de la demanda, se revoca el dictamen desestimando la reconvención y se le ordena al Tribunal de Primera Instancia que proceda a considerar los méritos de la misma, conforme a derecho.

Lo acordó y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General